FILED
2015 Jul-28 AM 09:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| IVAN QUINTEL METCALF, | ) | |
| | ) | |
| Plaintiff , | ) | |
| | ) | |
| v. | ) | Case No. 7:14-cv-01196-SLB-JEO |
| | ) | |
| CAPTAIN AGEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Ivan Quintell Metcalf  ("plaintiff"), has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration.  (Doc. 1).  The plaintiff names as defendants Commissioner Kim Thomas ("Thomas") and Tim Owens, Mike Agee and Gene Mitchell (jointly "the Lawrence County defendants").  The plaintiff complains that he was sexually assaulted by defendant Tim Owens, a Lawrence County officer, on September 27, 2013.  (Doc.1 at 4[1]).  The plaintiff also complains that on October 8, 2013, he was physically assaulted by defendant Owens, resulting in hospitalization.  (*Id.*)  As to

---

[1]All citations to the record are to the document and page numbers assigned by the court's electronic filing system.

defendants Thomas, Agee and Mitchell, the plaintiff asserts they denied him "safe housing."  (*Id.*)  Due to his injuries from the assaults, the plaintiff seeks compensatory and punitive damages.  (*Id*. at 5).  The plaintiff amended his complaint to clarify the names of the defendants and that he was claiming his rights under the Eighth Amendment and various state statutes were violated.[2] (Doc. 6).  He filed a second amendment to provide affidavits from other inmates in support of his allegations.  (Doc. 8).  Both of the amendments were allowed by the court.  (Doc. 9).

In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(2), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. Procedural History

On October 30, 2014, the court entered an Order for Special Report directing that copies of the complaint in this action be forwarded to the named defendants

---

[2]The state statutes listed by the plaintiff do not create a private cause of action upon which the plaintiff is able to seek relief.  Ala. Code §§ 14-3-13, 14-3-16 and 14-3-52 are within the title setting forth state prison guidelines.  Section 14-3-13 is the oath of office for prison guards, § 14-3-16 states a prison guard is guilty of a misdemeanor for violation of the chapter, and § 14-3-52 was repealed.  The remaining Code provision the plaintiff cited, § 14-4-11, allows a county commission to appoint a superintendent of public works if the court uses inmate labor in county public works projects.  As such, any claims the plaintiff brings under these Code provisions are due to be dismissed for failure to state a claim upon which relief may be granted.

and requesting that they file a special report addressing the factual allegations of the plaintiff's complaint. (Doc. 10). The defendants were advised that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. By the same Order, the plaintiff was advised that after he received a copy of the special report submitted by the defendants he should file counter affidavits if he wished to rebut the matters presented by the defendant in the special report. The plaintiff was further advised that such affidavits should be filed within twenty days after receiving a copy of the defendant's special report.

On January 9, 2015, defendant Kim Thomas filed a special report with affidavits, medical records, and other evidence attached. (Doc. 20). Defendants Owens, Agee and Mitchell filed a special report on January 12, 2015, also with affidavits and other evidence attached. (Doc. 21). The plaintiff filed a response (doc. 22) and was thereafter notified that the court would construe the special reports as motions for summary judgment and that he would have an additional twenty days to respond to the motion for summary judgment, filing affidavits or other material if he so chose. (Doc. 30). The plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See*

*Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  The Lawrence County defendants supplemented their special report with additional evidence on April 23, 2015.  (Doc. 31).  To date, the court has received no further response from the plaintiff.  However, the plaintiff has filed multiple motions seeking discovery (docs. 32-35), which the court has ruled on, as well as a motion to compel (doc. 37) which the court finds to be moot, as explained herein.

## II. Summary Judgment Standard

Because the special report of the defendants is being considered as a motion for summary judgment, the court must determine whether the moving parties, the defendants, are entitled to judgment as a matter of law.  Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Federal Rule of Civil Procedure 56.*  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991).  Unless the plaintiff, who carries the ultimate

burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532. However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).

### III. Summary Judgment Facts

Applying the above standards to the pleadings before the court, the following facts are undisputed or, if disputed, are taken in a light most favorable to the plaintiff.

The plaintiff, who is in custody at Bibb Correctional Facility, was transferred to the Lawrence County Jail for a court appearance. (Doc. 20-2 at 7). The plaintiff alleges that on September 27, 2013, while in Lawrence County Jail, he was sexually assaulted by defendant Owens, a Lawrence County Correctional Officer. (Doc. 1 at 4). He states that "Tim Owens came inside my cell and made me get against the wall and stripped search[ed] me, while I was held against the wall officer Tim Owens stuck his index finger and middle fingers inside my anus and said 'How does it feel cunt.' "[3] (*Id.*) Defendant Owens then threw him on the bed and said, "If you tell anyone I'll kill you."[4] (*Id.*) According to the plaintiff, two other inmates, Jose Martinez and "Curtis W." were present in D-cell at the time of this assault. (Doc. 20-2 at 12). On September 30, 2013, the plaintiff notified defendant Agee, who refused to let him file a grievance or send outgoing mail. (*Id.* at 12).

On October 8, 2013, while still housed at Lawrence County Jail, the plaintiff was physically assaulted by defendant Owens, causing the plaintiff to be hospitalized. (Doc. 1, at 4). According to inmate Bo Nickelson, he and inmate

---

[3] In some of the plaintiff's versions of this attack, he alleges that defendant Owens also placed his penis in the plaintiff's anus. (*See e.g.*, doc. 20-2 at 12; doc. 20-6 at 3-4).

[4] Defendant Owens denies this incident occurred. (Doc. 21, at 28).

Chris Orr were housed with the plaintiff at the Lawrence County Jail. (Doc. 8 at 3). He avers that plaintiff asked for his legal mail, to which defendant Owens responded by macing the plaintiff. (*Id.*) The plaintiff turned away and Owens then shot the plaintiff in the back with a stun gun. (*Id.*) After the plaintiff was on the floor, Owens kneed him, hit him, and put the stun gun to his back some more. (*Id.*) The plaintiff was removed from the room, then Orr and Nickelson were placed back in the same room with the plaintiff and the plaintiff had a seizure. (*Id.*) Approximately 40 minutes later, the plaintiff was taken to the hospital. (*Id.* When the plaintiff returned from the hospital, the plaintiff, Nickelson and Orr were all returned to Bibb Correctional Facility.[5] (*Id.*)

Inmate Chris Orr's affidavit is quite similar to Nickelson's. (Doc. 8 at 4). He states that the three inmates were in the multi-purpose room and the plaintiff kept asking for his legal mail. (*Id.*) Defendant Owens came through the door and sprayed the plaintiff. (*Id.*) When the plaintiff turned away, defendant Owens shot him in the back with a taser gun. (*Id.*) In other statements, both Orr and Nickelson

---

[5]Defendants Agee, Owens and Mitchell filed a special report and affidavits in response to the plaintiff's allegations. Although within that report they label facts as "undisputed" (doc. 21, at 5), their version of events and affidavits in support of their version contradict the version of events and affidavits submitted by the plaintiff. Because the court cannot reconcile the two versions, and because this case is before the court on the defendants' motions for summary judgment, the court has considered the evidence in the light most favorable to the plaintiff, accepting the version set forth by the plaintiff for purposes of this opinion.

state that Owens also hit the plaintiff in the head, and that after the plaintiff was handcuffed, defendant Owens ran the plaintiff's head into a walk.  (Doc. 20-2 at 15, 16).  Inmate Orr states that the plaintiff then had a seizure, was taken to the hospital, and when he returned, the three of them were returned to prison.  (Doc. 8 at 4).

Upon arrival at Bibb Correctional Facility, defendant Agee provided Correctional Officer Goggins with a Use of Force Report for the morning incident between the plaintiff and defendant Owens.[6]  (Doc. 20-2 at 8, 14, 18).  The plaintiff informed non-party Goggins that he had been sexually assaulted.  (*Id*. at 14).  Goggins reported the incident to Lieutenant Felicia Ford.  (*Id*. at 14).  The

---

[6]According to the incident report completed by Correctional Officer John Hutton at Bibb Correctional Facility, the altercation the morning of October 8, 2013, involving the plaintiff was between the plaintiff and an Officer Thompkins.  (Doc. 20-2 at 8; doc. 20-9).  According to the Use of Force report completed by defendant Owens, the plaintiff was told to stop kicking the door by an officer Thompson, but only officer Owens entered the room with the plaintiff.  (Doc. 20-2 at 18).  According to defendant Owens' affidavit, Officer Thompson did open the door to the multi-purpose room, to tell plaintiff to stop kicking the door.  (Doc. 21 at 27).

Because any allegation of an officer Thompkins or Thompson's involvement directly contradicts the plaintiff's allegations and the two affidavits of witnesses he submitted, the court assumes for purposes of this opinion that defendant Owens was the officer involved in the morning altercation.  The Alabama Department of Corrections ("ADOC") investigator stated that he reviewed the surveillance tape of the incident and that in it, Owens is heard to give the plaintiff several orders to stop knocking on the door; that deputy Owens entered the room and deployed his "OC," that the plaintiff attempted to strike defendant Owens with a belt and defendant Owens then tased the plaintiff, took him to the floor and placed him in handcuffs.  (Doc. 20-2 at 8-9).  According to Officer Hutton's investigation, as of December 5, 2013, the use of force was not justified, although the investigation continued.  (*Id*. at 19).

plaintiff was taken for body chart documentation, upon which the plaintiff was noted to complain of lower back pain, had a bump on his left thigh and had a bump on the right side of his forehead.  (*Id*. at 10).  The plaintiff also reported anal pain from the September 27 incident and severe thigh pain from the October 8 incident. (*Id*. at 10).

The October 8, 2013, hospital admission records reflect the plaintiff was brought in due to a seizure.  (Doc. 20-5 at 21).  He was noted to have suffered a trauma because he "fell and struck rt. side of head."  (*Id*. at 21).  A hematoma was noted on the right side of the plaintiff's face.  (*Id*. at 22).  The plaintiff was diagnosed with syncope.  (*Id*. at 22).  CT scans were normal, the plaintiff showed no signs of a heart attack and had no broken bones.  (*Id*. at 23, 31-33).

The plaintiff was issued a cane for seven days, from October 10, 2013, through October 17, 2013.  (Doc. 20-3 at 5; doc. 20-4 at 13).  Later medical records reflect that the plaintiff retained the cane due to back and leg trauma in 2013.  (*Id*. at 23, 32).  He also made numerous complaints of ongoing back and leg pain due to the October 8, 2013, incident.  (*Id*. at 25, 27, 29-30, 33; doc. 20-4 at 1, 3, 5-6, 8, 10, 14-16; doc. 20-5 at 2-13, 18).  X-rays of the plaintiff's back and hip in October and December 2013 and July 2014 were normal.  (Doc. 20-4 at 27-30).

Due to the sexual assault allegations, the plaintiff was referred for mental health services. (Doc. 20-5 at 14). The plaintiff was found not to need mental health services, but was told he could return as needed. (*Id*. at 14). An investigation into the sexual assault allegations by the Alabama Department of Corrections reached a conclusion of "unsubstantiated." (Doc. 20-6 at 5). The investigator noted that the plaintiff took a polygraph on the sexual assault allegations and untruthfulness was indicated. (Doc. 20-8). Although the plaintiff was not questioned on the use of force incident, the investigator wrote the Sheriff of Lawrence County to "urge you to refer the use of force allegation to an agency of your choosing so that an impartial investigation is conducted...." (Docs. 20-7, 20-8).

In addition to his allegations against defendant Owens, the plaintiff asserts that defendants Captain Mike Agee and Sheriff Gene Mitchell denied the plaintiff safe housing and refused to let the plaintiff file grievance and incident reports regarding defendant Owens' assault of the plaintiff. (Doc. 1 at 4). The plaintiff further alleges that defendant Kim Thomas also denied the plaintiff safe housing, did not let the plaintiff file grievance or incident reports concerning his hospitalization, and failed to investigate the plaintiff's allegations. (*Id*.)

Prior to filing this case on June 17, 2014, the plaintiff had filed an action in the Circuit Court for Lawrence County against defendants Owens and Agee alleging the same facts.  (Doc. 20-13).  That action, filed October 17, 2013, also asserts constitutional violations based on the above facts.  By motion to amend dated December 11, 2013, the plaintiff added defendant Mitchell and defendant Thomas as parties to that action.  (Doc. 20-13, at 8-11).  The claims in the state court action are virtually identical to those before the court here.  While that action was filed first, to date the defendants in the state court case have not been served. The plaintiff filed a motion to dismiss that action in January 2015.  (Doc. 31-1). The unserved defendants filed an objection to that motion (doc. 31-2), and the Circuit Court judge denied the motion to dismiss in April 2015.  (Doc. 31-1).  As of today, the defendants have yet to be served in that action.  *See* Case Action Summary, *Metcalf v. Owens*, CV 2013-000019.00, Lawrence County Circuit Court.

### IV. Discussion

#### A.  Abatement

The defendants assert that, due to the case pending in Lawrence County Circuit Court, this court should dismiss the federal action pursuant to § 6-5-440, *Code of Alabama* 1975, as amended.  That Code provision states that "[n]o

11

plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party." (*Id.*)    The defendants, relying on state court decisions, argue that "courts of this state" include federal courts within the State of Alabama. (Doc. 20 at 7; doc. 21 at 8).

The court is of the opinion that while § 6-5-440 may provide a bar to the Lawrence County court continuing its action in light of this federal litigation, § 6-5-440 provides no basis for this court to dismiss this action.  The abatement statute argument is not for this court to decide. *See e.g., Am. Cas. Co. of Reading, Pa. v. Skilstaf, Inc.*, 695 F.Supp.2d 1256, 1260 (M.D. Ala. 2010) (for a federal district court, Alabama's abatement statute does not control the decision to retain or dispose of the litigation).  This court must consider the abatement statute only if it creates a procedural bar to any state claims. *L.A. Draper & Son v. Wheelabrator-Frye, Inc*., 735 F.2d 414, 430 (11th Cir. 1984) (in a case based on federal question jurisdiction, district court erred when it did not consider Alabama's abatement statute as a procedural bar before dismissing state claims).  No such issue presents itself in the pleadings here.  Therefore, the court finds that the Alabama abatement statute, a procedural rule, does not apply to this matter.  The defendants' § 6-5-440 argument is without merit. *See e.g, Aerojet-General Corp. v. Askew*, 511 F.2d 710, 716 (5th Cir. 1975) (citing *Angel v. Bullington*, 330 U.S. 183, 192 (1947) ("Of

course, where resort is had to a federal court ... because a federal right is claimed, the limitations upon the courts of a State do not control a federal court sitting in the State."); *Tillman v. Georgia,* 466 F. Supp. 2d 1311, 1314 (S.D.Ga.  2006) (in claims arising out of federal law, federal law governs the substance and procedure of the action).

   *B.  Abstention*

   The abstention doctrine announced in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), "allows a federal court to dismiss a case when a concurrent state proceeding provides a more appropriate forum." *TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1294 (11th Cir. 1998). Allowing a dismissal is not the same as requiring a dismissal.  "Generally, as between state and federal courts, the rule is that the 'pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction....'"  *Colorado River*, 424 U.S. at 817 (citations omitted). Federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Id*.  Thus, federal courts should abstain to avoid duplicative litigation with state courts only in "exceptional" circumstances. *Id*., at 818. *See also American Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 884 (11th Cir. 1990) ("A federal court may dismiss an action because of parallel state court

litigation only under exceptional circumstances. Indeed, only the clearest of justifications will warrant dismissal.").  This case does not present an exceptional circumstance.

The court must consider six factors in deciding whether to abstain: (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties. *American Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 884 (11th Cir. 1990) (citing *Colorado River*, 424 U.S. at 818 and *Moses H. Cone Memorial Hosp. v. Mercury Constr.*, 460 U.S. 1, 23 (1983)).  No single factor is dispositive, and the court "is required to weigh the factors with a heavy bias favoring the federal courts' obligation to exercise the jurisdiction that Congress has given them."  *Jackson-Platts v. General Elec. Capital Corp.*, 727 F.3d 1127, 1141 (11th Cir. 2013).

Considering each of the above factors in turn, the court finds the first factor, the order in which the courts assumed jurisdiction over property, is inapplicable because this is not a proceeding *in rem*.  Where "there is no real property at issue," this factor does not favor abstention.  *See Maharaj v. Sec'y Dep't of Corr.*, 432

14

F.3d 1292, 1306 (11th Cir. 2005).   As to the second factor, the relative inconvenience of the fora, the court must consider the inconvenience of the federal forum and focuses "primarily on the physical proximity of the federal forum to the evidence and witnesses." *Ambrosia Coal and Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1332 (11th Cir. 2004).   As the plaintiff is housed in Bibb Correctional Facility, in Bibb County, and three of the four named defendants are located in Lawrence County, the court finds Lawrence County is more convenient for the defendants, but this court is closer to the plaintiff.   However, as the plaintiff and his witnesses are in state custody, the Lawrence County Circuit Court can obtain jurisdiction over the plaintiff for purposes of trial.   This factor weighs slightly in favor of abstention.

Under the third factor, the court must consider which forum acquired jurisdiction first.   *Jackson-Platts*, 727 F.3d at 1142.   The court considers not the "chronological order in which the parties initiated the concurrent proceedings, but the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier." *TranSouth Fin*., 149 F.3d at 1295. "This factor, as with the other *Colorado River* factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand.   Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of

how much progress has been made." *Moses H. Cone,* 460 U.S. at 21.  This factors weighs heavily, indeed almost decisively, in favor of declining to abstain. Although filed in October 2013, the state court action has not progressed beyond the filing of the plaintiff's complaint, which the plaintiff attempted to dismiss by way of a "Motion to Dismiss Without Prejudice," dated January 19, 2015.[7]  (Doc. 31-1).  On January 23, 2015, the Lawrence County defendants filed an objection to the plaintiff's motion and a motion to stay the state court proceedings.  (Doc. 31-2).  On April 15, 2015, the Circuit Court judge cryptically ruled that

> MOTION TO DISMISS WITHOUT PREJUDICE filed by METCALF IVAN AIS#267734 is hereby DENIED; this matter will proceed to adjudication of the issues raised here in.

(Doc. 31-3).

Through today, the defendants in that action have not been served.  Because this case is much further developed than the state court litigation, this factor weighs heavily in favor of not abstaining.  *See First Franklin Fin. Corp. v. McCollum*, 144 F.3d 1362, 1364-65 (11th Cir. 1998) ("The [third] factor, the order in which the tribunals obtained and exercised jurisdiction, also weighs against

---

[7]Under Rule 41(a), Ala. R. Civ. P., the plaintiff certainly could have dismissed the state court action without an order from the court.

discretionary dismissal.... [N]o activity had occurred in state court before the filing of the federal petition or even before the district court ruled.").

The fourth *Colorado River* factor questions the potential for piecemeal litigation. "Run of the mill piecemeal litigation will not do: this factor 'does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious.'" *Jackson-Platts*, 727 F.3d at 1142 (*quoting Ambrosia Coal*, 368 F.3d at 1333). The concern with piecemeal litigation arises primarily where parallel lawsuits "pose[] a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *Woodford v. Cmty. Action Agency of Greene County, Inc*., 239 F.3d 517, 524 (2nd Cir. 2001). Because this court has jurisdiction to resolve the entirety of the claims raised in both suits, this factor does not favor abstention.

The fifth factor requires a determination of whether federal or state law governs the action. As the plaintiff brings claims asserting his constitutional rights have been violated, questions of federal law, this factor too weighs against abstention.

The sixth and final factor requires this court to consider whether the state court will adequately protect the rights of all parties. This factor only weighs in favor of abstention when one forum is inadequate to protect a party's rights.

17

*Ambrosia Coal*, 368 F.3d at 1334.  Neither of the fora is inadequate.  This factor is therefore neutral.

In light of the foregoing, the court finds little in the way of support for abstention.  Most importantly, although pending first, the state court action has not progressed to the point of service on the defendants, no answer has been filed, and no dates have been set.  In contrast, this federal action is at the point of summary judgment.  This court declines to abstain, finding the same inappropriate under *Colorado River* and its progeny.[8]

The court therefore considers each claim, on its merits, against the named defendants.

### C.  Commissioner Kim Thomas

The plaintiff asserts that defendant Thomas failed to provide the plaintiff safe housing, failed to allow the plaintiff to pursue a grievance, and failed to investigate the plaintiff's allegations.  (Doc. 1 at 4).  Construing the plaintiff's safe housing claim as one for violation of the plaintiff's Eighth Amendment right to prison conditions that are humane, such claim fails.

---

[8]Within their special report, the Lawrence County defendants suggest this court stay this action if it determines that both abatement and abstention are inappropriate.  For the same reasons the court finds abstention inappropriate, the court declines to stay this action. Although pending for almost two years, the state court action remains dormant.

The plaintiff does not allege any facts which create a genuine issue of material fact that defendant Thomas had any awareness of the conditions in Lawrence County jail or any control over those conditions. Moreover, defendant Thomas, by virtue of his position as Commissioner of the Alabama Department of Corrections at the time in question, does not gain liability for other individuals' wrongful actions. Section 1983 contains no provision which allows a supervisor to be liable solely for the conduct of others. *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 690–92 (1978) and *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993), cert. denied, 510 U.S. 1164 (1994)).

In his response to defendant Thomas' special report, the plaintiff states that he "has reviewed applicable case law and has been unable to locate any authority imposing a constitutional duty upon Commissioner Thomas." (Doc. 22, at 7). The court views this statement as a tacit admission that defendant Thomas is due to have judgment granted in his favor on the plaintiff's claims.

### D.  *Lawrence County Defendants*

#### 1.  *Eleventh Amendment Immunity*

To the extent that the plaintiff brings this action against the Lawrence County defendants in their official capacities, they are immune from monetary

damages. Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, [59] (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cnty*., 116 F.3d 1419, 1429 (11th Cir. 1997).  Because the Lawrence County defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities, any such claims the plaintiff brings are due to be dismissed.

### 2. Defendant Tim Owens

As stated above, the plaintiff alleges defendant Owens physically and sexually assaulted him.  "Confinement in a prison where terror reigns is cruel and unusual punishment.  A prisoner has a right to be protected from the constant threat of violence and from sexual assault." *Jones v. Diamond,*  636 F.2d 1364, 1373

(5th Cir., 1981) (citations omitted) (*overruled on other grounds by Int'l Woodworkers of America, AFL-CIO v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir.1986)).

### a. Sexual Assault

The determination of whether a prison official's sexual abuse of a prisoner constitutes an Eighth Amendment violation requires a two-part inquiry. The first inquiry is the objective component, which requires a plaintiff show that the defendant's conduct was objectively serious or caused an objectively serious injury to the plaintiff. *Farmer v. Brennan*, 511 U.S. 825, 834, (1994); *see also Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006). The defendants first argue that the plaintiff's sexual assault claim cannot survive because the plaintiff has alleged no actual injury from the assault. (Doc. 21 at 22). Other circuits have held that "sexual assaults against inmates by prison guards without lasting physical injury may be actionable under the Eighth Amendment as acts which are 'offensive to human dignity.'" *Copeland v. Nunan*, 250 F.3d 743, 2001 WL 274738, *2 (5th Cir. 2001) (unpublished) (*quoting Schwenk v. Hartford*, 204 F.3d 1187, 1196-97 (9th Cir. 2000) (rape of prisoner case)). "[S]evere or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment." *Boxer X*, 437 F.3d at 1111. "'[S]exual abuse of a prisoner by a corrections officer has no

legitimate penalogical purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society.'"   *Id*.   (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2nd Cir. 1997)).

Moreover, the extent of injury suffered is but one factor to be considered in determining whether the use of force was wanton or unnecessary.  *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  The United Supreme Court in *Wilkins v. Gaddy* clarified that the purpose of *Hudson* was to "shift the 'core judicial inquiry' from the extent of the injury to the nature of the force – specifically, whether it was nontrivial and 'was applied ... maliciously and sadistically to cause harm.'"  *Id*., 559 U.S. 34, 39 (2010) (*quoting Hudson*, 503 U.S. at 7).  The Northern District of Florida recently reached a similar conclusion.  That court held:

> The [Supreme] Court more recently reiterated the core inquiry of *Hudson*, rejecting once again "the notion that 'significant injury' is a threshold requirement for stating an excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).... "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9.... The Court noted that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  559 U.S. at 38.  Notwithstanding, a prisoner's "relatively modest ... alleged injuries will no doubt limit the damages he may recover." *Id*. at 40.
>
> ....

There are occasions when § 1997e(e) should not be used to dismiss a claim for damages[;] where the jury should be permitted to consider the use of force and extent of a prisoner's injuries.  *See Harrell v. Cnty. of Nassau*, 2013 WL 5439137, at *10 (E.D.N.Y. Sept. 27, 2013) (denying summary judgment due to disputed facts, and drawing inferences in favor of Plaintiff who was punched in the face while restrained on a stretcher with a gunshot wound to his back, that if jury believed Plaintiff's evidence, they could reasonably find the force used "shocks the conscience."); *Hart v. Bell*, 2011 WL 1584601, at *5–6 (M.D. Tenn. Apr. 27, 2011) (denying summary judgment, including § 1997e(e) argument, and finding that, under plaintiff's version of the events, "there was no need for the application of any force by the defendants and the force that was used against him – choking him, twisting his wrists, placing handcuffs on him in an excessively tight manner, causing him to fall head first to the floor, and striking him in the face – was excessive, gratuitous, and malicious on the part of the defendants.").

*Black v. Brunson,* 2014 WL 5682653, 4-5  (N.D. Fla. 2014).

Another court to consider the matter reasoned as follows:

[T]he "physical injury" requirement of § 1997e(e) is equated with the concept of *de minimis* injury in Eighth Amendment jurisprudence, and the *de minimis* injury requirement is satisfied if the physical force used was "repugnant to the conscience of mankind."  I have no difficulty concluding that a sexual assault upon a prisoner by a correctional officer who has authority over the prisoner, and the responsibility to protect and care for the prisoner, is repugnant to the conscience of mankind.

A sexual assault on an inmate by a guard – regardless of the gender of the guard or of the prisoner – is deeply "offensive to human dignity." "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.' "

23

> *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000), quoting,
> *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d
> 811 (1994).

*Solliday v. Spence*, 2009 WL 559526, * 11-12 (N.D. Fla. 2009) (footnote omitted).

Other courts similarly have found intrusive sexual conduct combined with allegations of pain sufficient to satisfy the "injury" requirement. *See e.g., Smith v. Cochran*, 338 F.3d 1205, 1212 (10th Cir. 2003) (rape); *Little v. Walker*, 552 F.2d 193, 197 (7th Cir. 1977) (sexual assault).

Viewing the facts in the light most favorable to the plaintiff for purposes of this motion, the court finds that defendant Owens' conduct as alleged by the plaintiff in regard to the sexual assault was objectively serious, sufficient to satisfy the first prong of the Eighth Amendment analysis.

The second inquiry is the subjective component, "which requires the prison official have a sufficiently culpable state of mind," *Boxer X,* 437 F.3d at 1111*,* or to act with deliberate indifference to or reckless disregard for the plaintiff's constitutional rights, health, or safety, *Farmer*, 511 U.S. at 834, 836.  If no legitimate law enforcement purpose or penalogical purpose can be inferred from the officer's conduct, the conduct itself can be sufficient evidence of a culpable mind.  *See gen., Evans v. Stephens,* 407 F.3d 1272, 1281-1281 (11th Cir. 2005)*; Hammond v. Gordon County,* 316 F. Supp. 2d 1262, 1282 (N.D. Ga. 2002).  *See*

24

*also Wood v. Beauclair*, 692 F.3d 1041, 1050 (9th Cir. 2012) (citing *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999) (stating sexual actions served no valid objective, in such cases, the conduct itself constitutes sufficient evidence that force was used "maliciously and sadistically for the very purpose of causing harm.").

The Lawrence County defendants argue that because the plaintiff does not allege that Owens intended to sexually assault him, this claim fails.  (Doc. 21 at 22).  However, under the facts alleged by the plaintiff, the conduct described could only be intentional.  Those facts leave no room for the possibility that the described assault was accidental.  The cases relied on by the defendants do not require a different conclusion.  In each of the cases defendants cite (*see* doc. 21 at 21-22), the allegation of sexual abuse concerned fondling, not rape.[9]  Because no legitimate purpose was served by Owens' sexual assault of the plaintiff, the subjective component of the Eighth Amendment analysis is satisfied.  *See Wood*, 692 F.3d at 1050-51 ("[A]t its core, the Eighth Amendment protects 'the basic concept of human dignity' and forbids conduct that is 'so totally without

---

[9]The court is mindful that defendant Owens denies the sexual assault incident ever occurred.  Because such contradiction creates a genuine issue of material fact, its resolution is properly left to the trier of fact.

penological justification that it results in the gratuitous infliction of suffering.'")
(citing *Gregg v. Georgia*, 428 U.S. 153, 182-83 (1976)).

b. Excessive Force

To establish a claim for excessive force, the plaintiff must show that (1) the defendant acted with a malicious and sadistic purpose to inflict harm and (2) that a more than de minimis injury resulted. *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002). This court must decide "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson v. McMillian*, 503 U.S. at 7). Although the extent of any injury alone is not dispositive of an excessive force case, it is "one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Hudson*, 503 U.S. at 7 (*quoting Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Whether the use of force is excessive, and thus violates the inmate's right to be free from cruel and unusual punishment, depends on whether the jailer's act "shocks the conscience." *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007). Force "applied ... maliciously and sadistically for the very purpose of causing harm," is within the "shocks the conscience" realm. *Id.* To evaluate whether actions shock the conscience, the court must consider the following

26

factors: (1) the need for force; (2) the relationship between that need and the amount of force used; and (3) the extent of the resulting injury. *Whitley*, 475 U.S. at 321. Additionally, the court considers (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Id*. These factors must be viewed with "a wide range of deference to prison officials acting to preserve discipline and security." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990).

Once again taking the facts alleged in the light most favorable to the plaintiff, this claim against defendant Owens' survives summary judgment.[10] Considering the above factors, the court finds "[t]he need for the use of force [was]

---

[10]The Lawrence County defendants assert that defendant Owens' version of events is confirmed by the video of the October 8, 2013, altercation. However, that video has not been made an exhibit in support of these defendants' submissions. Even if it had, the defendants allege that the video shows that the plaintiff "flipped off" the observation camera and placed his belt over his shoulder while pacing the room. (Doc. 21, at 18). When defendant Owens entered the room, "plaintiff did not submit, but continued to have his belt on his shoulder." (*Id*.). The defendants continue that

> After Officer Owens deployed the pepper spray, the plaintiff lunged at him with the belt. After Officer Owens deployed the taser, the plaintiff continued to refuse to comply or submit to hand cuffs, necessitating knee strikes.

(*Id*.). Whether pepper spraying, tasing (by some accounts more than twice) and multiple knee strikes were "excessive" under these circumstances is a question for a trier of fact. Additionally, nothing in the defendants' account of the altercation necessarily contradicts the affidavits of Nickelson and Orr that defendant Owens ran the plaintiff's head into a wall after the plaintiff was handcuffed.

established by the undisputed evidence that [the inmate] created a disturbance." *Bennett*, 898 F.2d at 1533. However, turning to the second factor, the court is of the opinion that the amount of force used was far beyond that which was needed. According to the affidavits of the two inmates in the cell with the plaintiff, defendant Owens sprayed chemical spray in the plaintiff's face because he was demanding his mail and banging on the door. When the plaintiff turned away from Owens, Owens tased the plaintiff in the back. Once the plaintiff was on the ground, Owens repeatedly kicked the plaintiff. Finally, according to the other inmates affidavits, Owens purposefully slammed the plaintiff's head into a wall.

As to the third *Whitley* factor, the extent of the plaintiff's injuries, the plaintiff suffered a seizure, was hospitalized, has walked with a cane and had ongoing back and thigh pain since this incident with Owens. The fourth and fifth factors also weigh in the plaintiff's favor. The extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them, was minimal from the facts before the court. Similarly, as to the fifth factor, no effort was made to temper the severity of a forceful response by defendant Owens. When jailers continue to use substantial force against a prisoner who has clearly stopped resisting – whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated – that use

28

of force is excessive.  *See Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (giving special weight to the fact that the jailers "continued [to] use ... force in a manner that was severe enough to render [the plaintiff], at the very least, unconscious after [he] had surrendered"), *abrogated on other grounds, Kingsley v. Hendrickson*, – U.S. –, 135 S. Ct. 2466, 2472 (2015); *Skrtich v. Thorton*, 280 F.3d 1295, 1303 (11th Cir. 2002) ("[G]overnment officials may not use gratuitous force against a prisoner who has been already subdued or, as in this case, incapacitated.").  Here, the two inmates who witnesses the altercation both stated that Owens used his taser while the plaintiff was facing away from him, then gratuitously hit him once the plaintiff was on the ground.  Under the facts alleged in the complaint, Owens used force "maliciously and sadistically for the very purpose of causing harm."  *Whitley*, 475 U.S. at 320–21.

### c. Qualified Immunity

Having found a constitutional violation of the plaintiff's rights, the court must now consider whether the defense of qualified immunity assists defendant Owens.  Qualified immunity shields public officials in their individual capacities from some lawsuits against them arising from torts committed while they are performing a discretionary duty.  *Goebert v. Lee County*, 510 F.3d 1312, 1329 (11th Cir. 2007).  No one disputes that Owens' interactions with the plaintiff

occurred while defendant Owens was engaged in discretionary duties. To overcome the defense of qualified immunity, a plaintiff must show a constitutional or statutory violation of a right that was clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

Other courts have clearly stated that where a guard himself is responsible for the rape and sexual abuse of inmates, qualified immunity offers no shield. *See Chapman v. Willis*, 2013 WL 2322947, *8 (W.D. Va. 2013) (*citing Schwenk*, 204 F.3d at 1197; *Turner v. Huibregtse*, 421 F. Supp. 2d 1149, 1152-53 (W.D. Wis. 2006) (denying qualified immunity to guards who allegedly touched inmate's buttocks and fondled his penis).

As to the excessive force claim, the Eleventh Circuit has held that "there is no room for qualified immunity" in Eighth Amendment excessive force cases because they require a subjective element that is "so extreme" that "every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution." *Johnson v. Breeden*, 280 F.3d at 1321-22. Thus, a qualified immunity defense is not available when a plaintiff properly pleads the use of excessive force. *Danley v. Allen*, 540 F.3d

1298, 1310 (11th Cir. 2008) (*overruled on other grounds as recognized in Randall*

*v. Scott*, 610 F.3d 701 (11th Cir. 2010).

### 3. *Defendants Captain Agee and Sheriff Mitchell*

Plaintiff asserts that defendants Agee and Mitchell denied him "security in

safe housing" (doc. 1, at 4), which the court takes as a failure to protect claim

arising under the Eighth Amendment.  He further alleges that they "denied plaintiff

of grievance and incident reports where the plaintiff was hospitalized for the

alleged attacks."  (*Id.*)  Finally, in his response to the defendants' special report,

the plaintiff asserts:

> Creating the Notoriously known and called by Jailers D-cell Torture
> Chamber and Staffing it with several known rogue officers created
> unsafe housing and to run it like a Nazi Concentration Camp was
> deliberate indifference.

> Defendants Mitchell and Agee specifically developed and designed D-
> cell specifically for Heinous Crime inmates and assigned rogue
> officers for the purpose of inflicting punishment.

(Doc. 22, at 3-4).

"Supervisory officials are not liable under section 1983 on the basis of

respondeat superior or vicarious liability."  *Belcher v. City of Foley, Ala*., 30 F.3d

1390, 1396 (11th Cir. 1994) (citation omitted).  The plaintiff does not allege any

facts beyond his "rogue officer" theory, which is insufficient to create a genuine

issue of material fact concerning Mitchell and Agee's liability for Owens' actions. Section 1983 contains no provision which allows a supervisor to be liable solely for the conduct of others.  *Harris v. Ostrout*, 65 F.3d at 917 (citations omitted).

"The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."  *Harrison v. Culliver,* 746 F.3d 1288, 1298-99 (11th Cir. 2014) (citation omitted).  The plaintiff either must show defendants Mitchell and Agee directly participated in the unconstitutional conduct or that some causal connection exists between Mitchell and Agee and the alleged deprivation.  *See id.* (*citing Cottone v. Jenne*, 326 F.3d 1352, 1360-61 (11th Cir. 2003) (holding that a causal connection is shown by a history of widespread abuse which puts the supervisor on notice; a supervisor's custom or policy results in deliberate indifference to constitutional rights; or when facts support an inference that the supervisor directed his subordinates to act unlawfully or knew they would act unlawfully and failed to stop them)).  The plaintiff has not pleaded any facts which would establish a causal connection between defendants Mitchell and Agee and the acts which caused him harm.[11]

---

[11]For instance, the plaintiff does not allege that defendants Mitchell and Agee knew of a prior conflict between the plaintiff and Owens, does not allege that Owens had physically or sexually assaulted other inmates, and does not allege that his injuries were the result of Mitchell or Agee's customs or policies.  Even assuming the plaintiff is correct in his theory that D-Cell is

Nor has the plaintiff alleged such facts as to create liability for defendants Mitchell and Agee based on their own actions concerning any alleged deprivation of rights.  The Supreme Court has developed a two-part analysis governing Eighth Amendment challenges to prison conditions. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).  First, under the "objective component," a prisoner must prove that the condition he complains of is "harmful enough" to violate the Eighth Amendment.  *Hudson*, 503 U.S. at 8.  The challenged condition must be "extreme."  *Id*. at 9.  The second part of the two-part analysis is the "subjective component": That the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue.  *Hudson*, 503 U.S. at 8 (alterations and citation omitted).

Although negligence does not suffice to satisfy this standard, *Wilson v. Seiter*, 501 U.S. 294, 305 (1991), a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result," *Farmer*, 511 U.S. at 835.  In defining the deliberate indifference standard, the *Farmer* Court stated, "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement

---

staffed by rogue officers, the plaintiff's serious injuries from the altercation on October 8, 2013, did not occur in D-Cell.

unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The plaintiff here neither argues that defendants Mitchell and Agee met this standard, nor does he alleged facts which would allow the court to reach such a conclusion.

As to the plaintiff's claim that defendants Mitchell and/or Agee failed to allow him to file a grievance, or took no action upon the plaintiff's allegations, the plaintiff has pleaded this in a variety of ways. In his complaint, the plaintiff alleges that defendants Agee and Mitchell "denied plaintiff of grievance and incident reports where the plaintiff was hospitalized...." (Doc. 1 at 4). In a document he entitled "Order for Special Report," the plaintiff asserts the defendants failed to adequately respond to his complaints and grievances. (Doc. 13 at 1). In his response to the defendants' special reports, the plaintiff alleges that after the sexual assault by Owens, he "managed to inform Captain Agee who took no action to stop the abuse." (Doc. 22 at 9). In a statement given on October 8, 2013, upon his return to Bibb Correctional Facility, the plaintiff asserted that "I notified Captain Agee on about Sept. 30, 2013. Captain Agee said 'if you have a

complaint write a letter if I do not get it than the hell with it,' he refused to let me file a grievance on the incident or send outgoing mail out." (Doc. 20-2, at 12).

Viewing each of these allegations in the light most favorable to the plaintiff and drawing all reasonable inferences therefrom, the court finds the plaintiff's ability to pursue a grievance over the incidents in question was not thwarted. Although he asserts defendant Agee would not let him file a grievance, the plaintiff was able to state his allegations and have them thoroughly investigated upon his return to Bibb Correctional Facility.   Additionally, the plaintiff cites to no requirement that a county jail actually have grievance procedures in place. Moreover, the plaintiff's allegations that the defendants did not let him file a grievance fails to state a cognizable constitutional claim under § 1983.  A state inmate has no constitutionally protected interest in access to a grievance procedure. *See Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011).  While the Prison Litigation Reform Act requires a prisoner to exhaust "such administrative remedies as are available," 42 U.S.C. § 1997e(a), nowhere does it mandate that administrative procedures for exhaustion must exist in a county jail.  In other words, the failure to allow the plaintiff to file grievances while in Lawrence County Jail only prevents the defendants from now raising exhaustion of the same as a defense.  The plaintiff certainly has not been thwarted in his ability to pursue

his claims in court.  The court finds the defendants are due judgment in their favor on this claim.

### E.  The Pending Motion

After the court granted the plaintiff's motion for the production of medical records from Lawrence County (doc. 32), the plaintiff filed a "Motion to Compel and Compel Request for Interrogatories and Additional Discovery and Requested Production of Additional Documents Pursuant to Fed. R. Civil P. 56."  (Doc. 37).  Within that pleading, the plaintiff requests the court compel the defendants to produce the medical records from Lawrence County.  That portion of the motion is moot, as such relief was already provided to the plaintiff.  (Doc. 36).  The plaintiff also seeks to compel the defendants to answer his previously filed interrogatories.  (Docs. 33-35).  As the court has already denied the plaintiff's motions to propound those very interrogatories (doc. 36), that portion of the current motion is moot as well.

### V.  Recommendation

Accordingly,  for  the  reasons  stated  above,  the  magistrate  judge **RECOMMENDS:**

1.  That defendant Kim Thomas' motion for summary judgment (doc. 20) be **GRANTED** and the claims against defendant Thomas be **DISMISSED** with prejudice.

2.  That defendants Agee, Owens and Mitchell's motion for summary judgment (doc. 21) as to the plaintiff's claims against defendants Agee and Mitchell be **GRANTED** and these claims be **DISMISSED** with prejudice.

3.  That defendants Agee, Owens and Mitchell's motion for summary judgment (doc. 21) as to the plaintiff's claims against defendant Owens in his official capacity be **GRANTED** and these claims be **DISMISSED** with prejudice.

4.  That defendants Agee, Owens and Mitchell's motion for summary judgment (doc. 21) as to the plaintiff's claims against defendant Owens in his individual capacity be **DENIED**.

5.  That the plaintiff's claims pursuant to Ala. Code §§ 14-3-13, 14-3-16, 14-3-52, and 14-4-11 be **DISMISSED** for failure to state a claim upon which relief may be granted.

6.  That the plaintiff's motion to compel (doc. 37) is **MOOT**.

## VI. Notice of Right to Object

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections

with the clerk of this court.  **Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.** Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).

To challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  Any objections to the failure of the magistrate judge to address any contention raised in the complaint must also be included.  Objections not meeting the specificity requirement set out above will not be considered by a district judge.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.  Furthermore, it is not necessary for a party to repeat legal arguments in objections.  A copy of the objections must be served upon all other parties to the action.

On receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made

38

and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record.  The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions. Objections not meeting the foregoing specificity requirement will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation on the plaintiff and counsel for the defendants.

**DONE**, this 28th day of July, 2015.

JOHN E. OTT
Chief United States Magistrate Judge